IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-01593-RBJ

THE ESTATE OF JOSEPH C. "TREY" DUKE, III, by and through its personal representatives
Beth Anne Duke and Joseph Councell Duke, Jr.,
BETH ANNE DUKE, and
JOSEPH COUNCELL DUKE, JR.,

      Plaintiffs,

v.


GUNNISON COUNTY SHERIFF'S OFFICE,
RICHARD BESECKER, in his individual capacity,
IAN CLARK, in his individual capacity,
SCOTT LEON, in his individual capacity,
PAULA MARTINEZ, in her individual capacity,
CONNER UDELL, in his individual capacity,
MEGAN HOLLENBECK, in her individual capacity,
CHAD ROBERTS, in his individual capacity,
BRANDYN RUPP, in his individual capacity, and
RYAN PHILLIPS, in his individual capacity,

      Defendants.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendants' motions for summary judgment. ECF

Nos. 91, 92. After hearing oral argument on the motions, the Court GRANTS the motions.

### BACKGROUND

This is a sad case involving the death of a young man while in police custody. Joseph C.

("Trey") Duke, a recently released parolee, was arrested on the afternoon of June 27, 2015 for

possession of narcotics, violation of a protective order, and violation of his parole. ECF No. 91

1

at 3.  Trey was passed out when Deputy Clark of the Gunnison County Sheriff's Office

encountered him, but he woke up when Deputy Clark addressed him.  ECF No. 39 at 5; ECF No.

91-1 at 2.  Deputy Clark determined that Trey was under a protective order prohibiting him from

being under the influence of a controlled substance.   ECF No. 91-1 at 3.  Trey insisted that he

had only taken Clonazepam, a medication prescribed to him.  *Id.* at 9.  Deputy Clark conducted

field sobriety tests, which Trey failed, and he searched Trey, finding packets of an unknown

substance and a prescription pill bottle containing a substance other than what Trey was

prescribed.  ECF No. 91 at 3, ECF No. 39 at 7, ECF No. 91-1 at 5, 7.  Deputy Clark was joined

on the scene of the arrest by Deputies Leon and Martinez, and Colorado State Patrol Troopers

Sparks and Trafton.  ECF No. 39 at 7.

Deputy Martinez transported Trey to the Gunnison County Detention Center, where

Troopers Trafton and Sparks performed a Drug Recognition Evaluation ("DRE").  ECF No. 91 at

4.  During the DRE, the troopers checked Trey's vitals several times, but Trey declined a

voluntary blood draw.  ECF No. 92 at 3; ECF No. 91 at 4.  During the course of the evaluation,

which lasted about one-and-a-half hours, video shows that Trey mostly sat on a bench,

occasionally with his head nodding.  ECF No. 39 at 8.  At one point Trey fell off the bench to the

floor, after which he returned to his seat.  *Id.*  Trey would occasionally "slump over," but he was

"able to engage in whatever question was asked him [sic] or whatever the conversation was

going on around him."  ECF No. 91 at 4.  The DRE resulted in a finding that Trey was under the

influence of a Central Nervous System stimulant and a narcotic analgesic, though Trey continued

to deny using any drugs other than his prescription medication. ECF No. 39 at 8, ECF No. 91 at 4.[1]

Following Trey's evaluation, Deputy Udell transferred Trey to a padded holding cell with an in-cell camera. ECF No. 92 at 3. Between the hours of 7 p.m. and 11 p.m., Deputy Udell met with Trey at various points to complete a medical questionnaire, conduct his formal booking, and allow him to make a few phone calls and use the restroom. *Id.* at 4. Deputy Udell transferred Trey to a different cell around 11 p.m., and he continued to monitor Trey until the end of his shift at 2 a.m. *Id.* Other detention center staff, including Deputies Rupp and Roberts, periodically monitored Trey during the night as he slept, although plaintiffs dispute the level and adequacy of this monitoring. *Id.*

During the early morning hours of June 28, 2015 Trey was monitored periodically by Deputies Roberts, Rupp and Phillips. *Id.* Deputy Roberts delivered Trey a breakfast tray at 7:30 a.m., for which Trey thanked the deputy. ECF No. 92-2 at 4. When Deputy Roberts attempted to retrieve the tray at 8:00 a.m, Trey indicated that he was not done eating, so he was allowed to keep the tray. ECF No. 92 at 13. Deputy Phillips collected the tray around 8:30 a.m. ECF No. 91 at 5. At 9:01, as Deputy Roberts left the detention center for the day, he observed that Trey was seated on the floor as he had been for his breakfast, and that he was slumped over but breathing. *Id.* Three minutes later, Deputy Rupp checked on Trey and noticed that he was not breathing and appeared to have bile on his mouth. ECF No. 92 at 5. Deputy Rupp began performing emergency first aid and called for help; an ambulance arrived in minutes but emergency personnel were unable to revive Trey. *Id.*

---

[1] Troopers Trafton and Sparks were voluntarily dismissed from the case, despite their having had arguably the most in-depth engagement with Trey to assess his condition and the substances he had ingested. ECF No. 46.

An autopsy revealed a plastic baggie in Trey's gastric contents that contained traces of fentanyl. ECF No. 91-14. The autopsy determined that Trey had fentanyl, cocaine, benzodiazepines and oxycodone in his system at the time of death and concluded that the cause of death was an acute drug overdose. *Id.* Defendants' expert in forensic toxicology opined that the amount of fentanyl in Trey's system was high enough to be an independent cause of his death, and that none of the other drugs in his blood played a significant role in his death. ECF No. 91-6. As such, defendants contend that Trey ingested a fentanyl patch before he was arrested, and that the baggie enclosing the patch must have ruptured around breakfast time leading to his overdose. In contrast, plaintiffs' retained expert opined that while fentanyl most likely caused Trey's death, the effect of the fentanyl was augmented by the presence of a benzodiazepine in Trey's system. ECF No. 104-15 at 6. Plaintiffs argue that it cannot be conclusively proven that Trey ingested a fentanyl patch; that he ingested the fentanyl before, as opposed to during, custody; or that the fentanyl in his system independently caused his death.

## STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing An*derson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S.

at 248.  The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

ANALYSIS

Plaintiffs' complaint raises two claims: (1) a 42 U.S.C. § 1983 claim against all defendants other than Sheriff Besecker for a violation of Trey's constitutional rights under the Fourteenth Amendment for deliberate indifference to a serious medical threat, and (2) a state wrongful death claim under C.R.S. §13-21-202 against all defendants.  Defendants move for summary judgment on the § 1983 claim, asserting qualified immunity for the individual defendants and lack of municipal liability on behalf of the Sheriff's Office.  Defendants also move for summary judgment on the state wrongful death claim, first on the grounds that the Court ought not extend supplemental jurisdiction if the federal claim is dismissed, and alternatively on the basis that plaintiffs are not eligible to invoke any of the limited exceptions to defendants' immunity to the state wrongful death law.  I will address each claim in turn.

**A. <u>42 U.S.C. § 1983 Deliberate Indifference Claim</u>.**

Plaintiffs' § 1983 claim alleges that all the named defendants, aside from Sheriff Besecker, were deliberately indifferent to Trey's serious medical need in violation of the Fourteenth Amendment.  ECF No. 39 at 14.  Plaintiffs contend that the defendants were aware of Trey's intoxication and risk of death by overdose at the time of his arrest and detention, and that their failure to seek medical treatment led to Trey's death.  *Id.*

*i. <u>Individual Defendants' Defense of Qualified Immunity</u>.*

The individual defendants assert the defense of qualified immunity.  "The doctrine of qualified immunity protects officials from civil liability as long as they do not 'violate clearly

5

established statutory or constitutional rights of which a reasonable person would have known.'" *Lincoln v. Maketa*, — F.3d —, 2018 WL 443394, at *2 (10th Cir. Jan. 17, 2018) (citing *Mulllenix v. Luna,* 136 S. Ct. 305, 308 (2015)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, — U.S. —, 137 S.Ct. 548, 551 (2017) (internal citation omitted).

To overcome a defense of qualified immunity, plaintiffs must show that (1) defendants violated a constitutional or statutory right that was (2) clearly established at the time it was violated. *Id.* Plaintiffs bear the burden to show defendants are not entitled to immunity. *Lincoln*, 2018 WL 443394, at *2. The Court may resolve an issue of qualified immunity on either of the two prongs, and the Court need not decide whether a violation occurred if it concludes that the right at issue was not clearly established. *Id.* at *3. This case is resolved on the second prong: there is no clearly established constitutional right to medical care under either party's theory of the case.

The parties differ with respect to their articulation of the right at issue. Plaintiffs argue that an inmate or detainee has a right to medical care when he presents in an intoxicated state that could lead to an overdose.[2] In contrast, defendants describe the constitutional issue more narrowly: whether a detainee has a right to medical care for the specific medical issue that ultimately causes his death, which in this case they allege was an acute fentanyl overdose. Plaintiffs dispute defendants' theory on the grounds that it is undermined by a factual dispute about the ultimate cause of Trey's death. They point in particular to the autopsy doctor's

---

[2] Trey was a parolee at the time he was arrested and detained. As a result, defendants argue that he was a convicted inmate, rather than a pretrial detainee, upon his arrest and detention. ECF No. 91 at 7 n.5. However, as defendants also note, this distinction is immaterial since the Due Process Clause of the Fourteenth Amendment affords pretrial detainees "'the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment.'" *Estate of Martinez v. Taylor*, 176 F. Supp.3d 1217, 1226 n.2 (D. Colo. 2016) (quoting *Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)).

testimony that Trey died of an overdose "related to polydrug, multiple drugs." ECF No. 104-14 at 2.[3]

However, any alleged factual dispute as to the particular nature of Trey's death by overdose is immaterial because plaintiffs are unable to establish an essential element required to overcome qualified immunity: even assuming *arguendo* that plaintiffs are right that Trey died of a polydrug overdose, they have failed to demonstrate that the law was clearly established such that defendants would have been on notice that Trey was entitled to medical care as a result of his intoxicated state. For a constitutional question to be "clearly established," existing precedent must "place[] the issue beyond debate." *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015). To satisfy this prong, plaintiffs must identify "precedents involving materially similar conduct or obvious applicability." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017).

Plaintiffs have failed to do so here. They have not presented, nor has this Court found, any Tenth Circuit or Supreme Court case with similar facts that would have indicated to defendants that Trey's state of intoxication when he was arrested or in detention required that he receive medical attention. Instead, plaintiffs cite only the "general proposition that the Eighth Amendment prohibits jail officials from ignoring obvious signs of drug intoxication that creates a risk of death by overdose." ECF No. 104 at 22 (citing *Garcia v. Salt Lake Cnty.*, 786 F.2d 303, 308 (10th Cir. 1985)). I am not persuaded by plaintiffs' reference to *Garcia*. In that case, the Tenth Circuit upheld a jury's finding that a county was deliberately indifferent when it allowed unconscious people suspected of being intoxicated to be admitted to jail and monitored infrequently. *Garcia*, 786 F.2d at 308. The decedent in that case had been arrested for drunk

---

[3] Plaintiff's expert also opined that Trey died of an overdose of opioids "in the presence of a benzodiazepine," noting that "[t]he opioid most likely to have been the cause of death is fentanyl." ECF No. 104-15 at 6.

driving and taken to a hospital for back pain, where he ingested an overdose of barbiturates and escaped, only to be found unconscious outside the hospital by police officers. *Id.* at 305. He was taken to a jail to be watched, where he remained unconscious for the duration of his custody until he was ultimately found apparently dead. *Id.* at 305–06. Though plaintiffs allege that *Garcia* establishes a general principal that jail officials may not ignore "obvious signs of drug intoxication that creates a risk of death by overdose," ECF No. 104 at 22, "[c]learly established law should 'not be defined . . . at a high level of generality.'" *The Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Instead, a party asserting a clearly established right must point to "precedent close enough on point to make the unlawfulness of the officers' actions apparent." *McInerney v. King*, 791 F.3d 1224, 1236–37 (10th Cir. 2015).

*Garcia* is not such a case. Unlike the detainee in *Garcia* who was unconscious at all times during his arrest and detention, Trey was conscious and conversant with defendants during his arrest and much of his detention when he was not asleep. Trey was able to get up to use the bathroom, make two phone calls, and eat breakfast during the course of his detention. Given the factual distinctions between Trey's case and the detainee's case in *Garcia*, that case would not have informed defendants that their treatment of Trey was unconstitutional. Moreover, the Tenth Circuit in *Garcia* couched its holding in narrow terms, noting that "the County's policy of admitting to jail *unconscious* persons suspected of being intoxicated, carried out with the described deficiencies and indifference, caused a violation of Garcia's constitutional rights." 786 F.2d at 308 (emphasis added). The court notably did *not* find that merely admitting persons suspected of being intoxicated would violate their constitutional rights. *See also Hocker*, 22 F.3d at 999 (emphasizing that a claim for deliberate indifference under *Garcia* depends on a finding

that staff admitted "*unconscious*, intoxicated arrestees") (emphasis in original). As such, *Garcia* does not constitute clearly established law that would have put defendants on notice that their admitting an intoxicated individual into custody without seeking medical care was unconstitutional.

Further, I am not persuaded by plaintiffs' contention that all of defendants' cited cases "stand for the proposition that if a jail official knows of facts demonstrating the risk of overdose, he may be held liable under the Eighth Amendment." ECF No. 104 at 23 (emphasis removed). Defendants relied on Tenth Circuit cases in which constitutional liability for deliberate indifference to a serious medical need requires that the official have been aware of and consciously disregarded the specific harm that caused an inmate's death. ECF No. 91 at 13 (citing *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (jail staff protected by qualified immunity when they could not have known from the fact of intoxication that the decedent was at risk of a fatal heart attack); *Hocker*, 22 F.3d at 1000 (detention center staff were not deliberately indifferent to the risk of decedent's suicide despite their knowledge of her intoxication)). In oral argument, plaintiffs conceded that in these cases the defendants were protected by qualified immunity, but plaintiffs contended that such outcomes were fact-specific and did not undermine the right to medical treatment for intoxication with a risk of overdose. However, plaintiffs are unable to point to a single authority establishing such a principal. The implication that such a right has been established "in the negative"—as plaintiffs urged in oral argument—but has not been supported in case law is not enough to substantiate that the law on the subject is clearly established.

In particular, plaintiffs dispute defendants' use of *Martinez v. Beggs*. Similar to this case, the decedent in *Beggs* was "conscious, on his feet, argumentative, and cognizant that he was

being arrested," and he "exhibited 'characteristics that are common to many intoxicated individuals.'"  563 F.3d at 1091.  As such, the Tenth Circuit noted that the officers could not have predicted his "imminent heart attack or death." *Id.*  *Beggs* does not provide that the officers should have provided medical care for the decedent simply because of his intoxicated state. Plaintiffs apparently rely on the court's note in *Beggs* that because "the sufficiently serious objective harm that [the decedent] faced was heart attack and death, and not acute intoxication," the officers could not be found deliberately indifferent to the particular harm that would befall him. *Id.* at 1090.  However, nowhere does the *Beggs* court find that the officers should have attended to the decedent's medical needs simply because they were aware that he was intoxicated.  Without such a holding, I cannot find that *Beggs* implies that the officers should have done more simply because the decedent was intoxicated.

As a result, plaintiffs have failed to demonstrate any clearly established law in support of the constitutional right that they allege was violated in this case.  Because defendants would have had no notice that it was illegal to admit Trey for detention and monitoring in his intoxicated state, they are entitled to qualified immunity even under plaintiffs' theory of the right at issue. There is no doubt that the deputies perceived that Trey was intoxicated.  But no case would have notified them of a constitutional requirement that they take Trey to an emergency room rather than to the detention center, or that they do more than what they did: conduct a DRE exam, allow him to use the restroom, make phone calls, and eat breakfast, and let him sleep off his intoxication while monitoring him periodically.

Finally, assuming alternatively that defendants' narrower theory of the right governs, they have successfully demonstrated that there was no clearly established law requiring medical attention for a risk about which they had no knowledge.  Thus, under defendants' theory that

10

Trey died from exposure to fentanyl—about which they had no knowledge—defendants are correct that no clearly established law made their behavior unconstitutional.

Because there was no clearly established right that any defendant violated in this case, the individual defendants are all entitled to qualified immunity. As a result, the individual defendants' motions for summary judgment are GRANTED.

ii. *Gunnison County Sheriff's Office Municipal Liability.*

Plaintiffs have also sued the Gunnison County Sheriff's Office as a municipal entity for implementing an unconstitutional policy or custom that caused the violation of Trey's constitutional rights. ECF No. 104 at 15 (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–91 (1978)). Plaintiffs allege that the Sheriff's Office is subject to municipal liability under 42 U.S.C. § 1983 for lacking policies and failing to train its officers and employees about when medical clearance is needed for intoxicated inmates. *See id.* at 23.

Defendants argue that there can be no municipal liability for the failure to train where there is no underlying constitutional violation by an individual defendant. ECF No. 91 at 15 (citing *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993)). While it is true that a municipality may not be held liable when there is no underlying constitutional violation by an officer, "[w]hen a finding of qualified immunity is predicated on the basis that the law is not clearly established . . . 'there is nothing anomalous about allowing a suit against a municipality to proceed when immunity shields the individual defendants, for the availability of qualified immunity does not depend on whether a constitutional violation has occurred.'" *Hinton*, 997 F.2d at 783 (quoting *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988)). In this case, since my finding of qualified immunity is predicated on the lack of a clearly established

right, I must proceed to consider whether the Sheriff's Office may be held liable for deliberate

indifference for its failure to train officers and staff about drug overdoses.

"[T]o prove a § 1983 claim against a municipality, a plaintiff must show the existence of

a municipal policy or custom which directly caused the alleged injury." *Pyle v. Woods*, 874 F.3d

1257, 1266 (10th Cir. 2017). In the absence of an explicit policy or custom, "[m]unicipal

liability may be based on injuries caused by a failure to adequately train or supervise employees,

so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10th Cir. 2010)

(quoting *City of Canton v. Harris*, 489 U.S. 378, 388–91(1989)). Thus, to find the Sheriff's

Office liable, plaintiffs must show that the failure to train officers and staff about the signs of

drug overdoses "amounts to deliberate indifference." *Harris*, 489 U.S. at 388. The Tenth Circuit

"confirmed that this deliberate indifference standard may be satisfied 'when the municipality has

actual or constructive notice that its action or failure is substantially certain to result in a

constitutional violation, and it consciously and deliberately chooses to disregard the risk of

harm.'" *Olson v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting *Barney v.

Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999)). The Tenth Circuit has also noted that "a

single incident generally will not give rise to liability," but that "'deliberate indifference may be

found absent a pattern of unconstitutional behavior if a violation of federal rights is a 'highly

predictable' or 'plainly obvious' consequence of a municipality's action.'" *Id.* (quoting *Barney*,

143 F.3d at 1307)).

Plaintiffs in this case have provided no evidence that the Sheriff's Office's failure to train

its officers or staff on the signs of an overdose resulted from its deliberate indifference to drug

overdoses. Instead, the evidence indicates that while the Sheriff's Office lacked a written policy

explicitly requiring medical care for drug-intoxicated individuals under particular circumstances, it instructed its officers to use their judgment and to consider the totality of the circumstances to determine when drug-intoxicated individuals require medical treatment. *See* ECF No. 104-16, 104-19, 104-21, 104-27. In addition, the Sheriff's Office's 30(b)(6) deponent testified that the "broad scope of overdoses is so vague" that it would be time- and cost-prohibitive to attempt to train its officers on the signs of an overdose. ECF No. 104-29 at 4; *see also id.* at 2 ("[E]verybody detoxes, everybody gets high, everybody gets drunk at different levels."). Moreover, there is no evidence that the Sheriff's Office was on notice that its failure to train was "substantially certain to result in a constitutional violation;" instead, as defendants point out, plaintiffs have not presented a single case before Trey's death in which an inmate overdosed on drugs in custody as a result of the Sheriff Office's failure to train. ECF No. 108 at 7.

Because there is no evidence that the Sheriff's Office was deliberately indifferent to the injuries that could result from its failure to train its officers and staff on the signs of an overdose, municipal liability under § 1983 is inappropriate. Therefore, defendants' motion for summary judgment on plaintiffs' municipal liability claim is GRANTED.

### B. State Wrongful Death Claim.

In their state wrongful death claim under C.R.S. § 13-21-202, plaintiffs Beth Ann Duke and Joseph Councell Duke, Jr. allege that defendants breached their legal duty to prevent Trey's death by failing to obtain medical treatment for him. ECF No. 39 at 15. Because I am granting summary judgment on plaintiffs' federal claims, I decline to exercise supplemental jurisdiction over plaintiffs' state law claim. See 28 U.S.C. § 1367(c)(3). Although I recognize that a federal "court should consider retaining state claims when, 'given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining

jurisdiction,'" I find that this is not such a case. *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) (quoting *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995)).

The parties dispute whether a wrongful death case may proceed against defendants given the Colorado Governmental Immunity Act's immunity for public entities and employees. *See* ECF No. 91 at 17, ECF No. 104 at 24. In particular, the parties dispute whether Trey's parents may assert a waiver of this immunity under the law's exception for the operation of a correctional facility since they—unlike Trey himself—were not convicted of a crime and incarcerated in a correctional facility. ECF No. 104 at 24. The state court is better equipped to consider this dispute over the proper interpretation of the Colorado Governmental Immunity Act as it applies to Trey and his estate. As a result, this claim is DISMISSED without prejudice.

## ORDER

For the reasons stated herein, summary judgment is GRANTED on plaintiffs' § 1983 claim against all defendants [ECF Nos. 91 and 92], and plaintiffs' state wrongful death claim is DISMISSED without prejudice.

DATED this 29th day of January, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge